JANE E. WHITEMAN, Exr., *v.* C. C. FIELD, J. P. FIELD, WM. FIELD, C. C. MARTIN, M. A. BINGHAM, J. S. BINGHAM.

*Homestead may be Lost by Abandonment.*

1. When one claims a homestead to be exempt he must show that the *premises have been used* or *kept by him for a homestead.*

2. In ascertaining whether *premises have been kept as a homestead,* the *intention* of the party making the claim is *necessarily an important element* for consideration.

3. That the defendant deeded to his brother his interest in the house; that he gathered materials to build *another house ;* that he filed his petition to have a homestead set out from another part of the mortgaged premises; that he lived for several years in several different towns,—are actions inconsistent with the idea that he was *keeping* the premises for a homestead.

4. The right of the wife and minor children in the homestead is only *inchoate,* subject to be *defeated by the husband's* acquiring a new homestead, or abandoning the old one.

5. *Abell et al.* v. *Lothrop,* 47 Vt. 375—explained, limited.

6. Homestead Act, (R. L. s. 1904) construed.

THIS case was heard at the September Term, 1879. POWERS, Chancellor, decreed that the defendant C. C. Field was entitled to a homestead. Petition to foreclose a mortgage. It was served on the defendants the 20th day of March, 1878. The mortgage was executed on the 23d day of September, 1868. The premises were situated in Essex. The defendant C. C. Field, claiming the homestead, resided, after the mortgage was given, in several different towns, and at Montpelier, after the spring of 1875. On the 11th day of April, 1878, the said C. C. Field filed his petition in the court, claiming a homestead in *another part of the mortgaged premises* than that which he claimed in his answer filed January 15th, 1879. The defendant and H. W. Field, owning the premises in common, on the 25th day of April, 1868, made partition by deeds (their wives not joining) ; H. W. taking the dwelling house in question, on the southerly side of the highway, and C. C. the land on the northerly side of the highway, which had an old house upon it, unoccupied. The defendant admitted in

his answer that he had intended to build a house on his part ; and that stone and timber were delivered on the land for that purpose. The other facts sufficiently appear in the opinion of the court:

*W. L. Burnap*, for the orator.

No claim is now made by the defendant to a homestead in the land on the northerly side of the road, (vested in him alone by the terms of the partition,) though such claim was at first set up.

It appears that there was an old house upon this parcel, never occupied or kept for use by him, his intention being—as disclosed by his answer and all the testimony—to build new buildings for that purpose thereon. Did he acquire such homestead ? He claims it by his answer, and the burden is upon him to establish it. Story Eq. Jur. s. 1539 ; *Viele and Wife* v. *Blodgett and Wife*, 49 Vt. 270.

There must be a *purpose* of *returning to*, or of *keeping* the place as a homestead. *Vasey* v. *Board of Trustees*, 59 Ill. 188. It is elementary, that when one conveys lands in which his title is imperfect or contingent, and afterwards the contingency is removed or the title becomes perfect, it enures to the benefit of the grantee ; and the rule applies to mortgages with covenants of warranty as well. *Somes* v. *Skinner*, 3 Pick. 51 ; *Jarvis* v. *Aiken*, 25 Vt. 635 ; *White* v. *Patten*, 24 Pick. 324 ; 1 Jones on Mort. 679. Abandonment of the homestead cures any defect there may have been in the execution of the mortgage by reason of the wife not signing it. *Himmelman* v. *Schmidt*, 23 Cal. 117 ; *Hewitt* v. *Templeton*, 48 Ill. 367 ; *Cobb* v. *Smith*, 88 Ill. 199.

*Wm. G. Shaw*, for the defendant.

The fact that the defendant was a tenant in common of the premises with his brother does not prevent his having a homestead there. *McClary* v. *Bixby*, 36 Vt. 254 ; *Danforth* v. *Beattie*, 43 Vt. 138. It seems clear that during this lumbering job Charles Field was, in the language of the statute, *keeping* his interest in the Essex property as a homestead. Indeed it was almost, if not quite, a *use* of it *as* a homestead, but most certainly a *keeping* of it for that purpose. *West River Bank* v. *Gale*, 42 Vt. 27 ; *Bug-*

*bee* v. *Bemis*, 50 Vt. 216. For want of the signature of the wife, the mortgage was absolutely void to convey the homestead inter-est, both as to Field himself and as to his wife and children. *Abell* v. *Lothrop*, 47 Vt. 375 ; *Day* v. *Adams*, 42 Vt. 516 ; Gen. Sts. c. 68, s. 10. The homestead law is always liberally con-strued in behalf of the homesteader. *Jewett* v. *Guyer*, 38 Vt. 218 ; *True* v. *Morrill*, 28 Vt. 674 ; *McClary* v. *Bixby*, 36 Vt. 254.

The opinion of the court was delivered by

ROYCE, J. The only question to be considered is, whether the defendant, C. C. Field, had a homestead in the premises described in the petition at the time of the execution of the mortgage sought to be foreclosed, and whether he can now assert his right to such homestead.

Where a homestead is claimed, it is incumbent upon the claim-ant to show that the premises have been used or kept by him as a homestead. It has been held under the statute of 1849, which re-quired that the premises should be occupied as a homestead, in *True* v. *Morrill*, 28 Vt. 672 ; *Mills* v. *Grant*, 36 Vt. 269 ; *Davis* v. *An-drews*, 30 Vt. 678, that there must be a personal occupancy of the premises by the housekeeper, and that he should live and have his home there. After that statute was amended so that it was only re-quired that the premises should be used or kept by such housekeeper or head of a family it was held, in *West River Bank* v. *Gale*, 42 Vt. 27, that the premises must actually be used or kept as a homestead ; and that a temporary sojourn elsewhere for a specific purpose would not be an abandonment of the place as his homestead, if his intention was to keep it as a homestead, and he purposed to return to it after such temporary sojourn elsewhere, and did so return. The examination we have made of the pleadings and proofs has failed to convince us that C. C. Field ever so used any portion of the mortgaged premises as to be entitled to a homestead therein. His occupation of the house after his marriage and until his removal to Montpelier was only occasional, and was rather, as it seems to us, to accommodate the business of himself and brother, than with a design or expectation of making it his home in the sense in which the word is used construing the statute. In

ascertaining whether premises have been kept as a homestead, the intention of the party making the claim is necessarily an important element for consideration, and upon the question of intention the conduct of C. C. Field is significant. It appears that in the fall of 1867, and prior to the execution of the mortgage sought to be foreclosed, he and his brother H. W. Field, who until that time had owned the land described in the petition in common, made partition of the same; and C. C. Field executed a deed to H. W. of all that portion of the premises situate upon the southerly side of the highway, and upon which the house in which C. C. now claims a homestead stood, in consideration of a deed executed at the same time by H. W. to him of all that portion of the premises situate upon the northerly side of the highway; that the purpose and object of the parties in making that division was to enable C. C. to erect buildings upon, and make a home for himself and family upon the premises so conveyed to him; that in pursuance of that arrangement some building materials were procured and placed upon the land; and the design to build upon it does not seem to have been abandoned until long after the execution of the mortgage in question. This conduct is inconsistent with the idea that he was during all that time keeping the premises so conveyed by him as and for a homestead. Without reference to the legal effect of the deed executed by C. C. Field as affecting the homestead interest in the premises so conveyed, the fact is pertinent and material upon the question of intention. So, too, the application of C. C. Field filed in this cause before the filing of the answer, praying to have a homestead set out to him in that portion of the premises which was deeded to him by H. W. Field, is evidence tending to show that he then considered that whatever homestead right he had was in that portion of the premises from which he prayed it might be set out. It is also suggestive of the idea that C. C. Field never claimed to have, or thought he was entitled to a homestead in the premises on the southerly side of the highway, until he had been advised that he had no homestead right in the premises conveyed to him by H. W. Field.

It is unnecessary to consider the question whether C. C. Field

had lost his homestead right by abandonment; because we find that he never acquired any such right in any portion of the mortgaged premises. This being so, the mortgage executed by him was operative to convey the entire interest in the premises, and there was no necessity for his wife's joining him in its execution.

This finding is conclusive against the right of C. C. Field to a homestead in the premises described in the mortgage sought to be foreclosed; but the question of the legal effect of the mortgage deed executed by C. C. Field upon the assumption that he then had a homestead in the premises described in it, has been ably discussed by counsel, and we have thought proper to consider it.

It has been claimed by counsel for C. C. Field, that that deed was absolutely void; and in support of that claim they relied mainly upon what is said by the judge who drew up the opinion in *Abell et al.* v. *Lothrop*, 47 Vt. 375. It is there said, in speaking of the sole deed of a husband and father of minor children, while they were in the occupancy of certain premises as a homestead, that his deed was absolutely void—that he had no capacity to deed, and that the title to the estate remained as if no deed had been executed. In that case the premises sought to be exempted as a homestead, were occupied by the grantor and his family, as and for a homestead at the time his mortgage deed of the same was executed; and when the assignee of the mortgage sought to oust the orators, who were the grantor, his wife and minor children, from the possession of the same, it was only necessary to determine upon that state of facts whether a deed so executed would estop the grantor, his wife and minor children from claiming a homestead in the premises described in it. All that the court was called upon to decide, and all that it intended to decide was, that such a deed was voidable at the instance of any party who had a homestead interest in the premises attempted to be conveyed by it.

The homestead right of the wife and minor children is inchoate, subject to be defeated by the abandonment of the same by the head of the family or the acquisition of another homestead by him. *Howe* v. *Adams*, 28 Vt. 541; *Davis* v. *Andrews*, 30 Vt. 678; *Jewett* v. *Brock*, 32 Vt. 65; *McClary* v. *Bixby*, 36 Vt. 254.

And in case of the death of the wife and minor children during the lifetime of the husband and father, the estate is relieved from any homestead interest in the same. To hold that a deed, executed by the owner of the estate subject only to the incumbrance of .such an inchoate right, is absolutely void, would in legal effect render the deed inoperative as against the grantor to convey any interest in the estate, although the incumbrance had been removed, and leave the title in him unaffected by his conveyance. There is no limit to the number of homesteads that a husband and father of a family may acquire, and if his sole deed as to one is void it is void as to all, and the title to the homesteads that he might hold notwithstanding his deeds would depend upon the number of new homesteads that he might acquire. The language of the statute which provides that the sole deed of the husband shall be wholly inoperative to convey any interest in the homestead, taken alone, might warrant the construction which was put upon ,it by the learned judge; but taking that section in connection with the rest of the chapter upon the subject of homesteads, it is evident that no such construction was intended.

The object in requiring the wife to join in a deed conveying the homestead was for her protection and that of the minor children. That object is fully attained by holding that the sole deed of the husband and father is voidable for the benefit of the wife and children. That construction harmonizes with the spirit and intent of the law upon the subject; while the construction put upon it (inadvertently no doubt) by the judge who drew up the opinion in that case might lead to the absurd results hereinbefore indicated, and is in conflict with the admitted rules of law defining the legal interests of grantor and grantee under a conveyance where the estate is incumbered at the time the deed is executed.

The Court of Chancery erred in decreeing that C. C. Field was entitled to a homestead in the premises described in the petition ; and that decree is reversed, and cause remanded, with a mandate that a decree be entered for the petitioners against all of the defendants except Marcellus A. and Josephine S. Bingham for the amount due upon the claims, and amount paid for taxes, as set forth in the petition, with interest on the same, and against all of the premises described in the petition.